UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:                                                                          CASE NO.: 21-11861- EPK

PAULO SANTANA AND
JENNIFER SANTANA                                                     In proceedings under Chapter 11

Debtors.
_____/

## DISCLOSURE STATEMENT

Paulo and Jennifer Santana, (hereinafter referred to as the "Debtors"), pursuant to 11 U.S.C. 1125 and Bankruptcy Rule 3016(c) hereby provide this Disclosure Statement (the "Disclosure Statement") to all known creditors in order to disclose that information deemed by the Debtors to be material, important and necessary for his creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance, rejection, or abstention from voting on the Plan of Reorganization, (hereinafter referred to as the "Plan"). A copy of the Plan accompanies this Disclosure Statement.

**I. INTRODUCTION**

Debtors filed their Plan with the United States Bankruptcy Court for the Southern District of Florida and, in connection with the Plan, the Debtors hereby submit their Disclosure Statement to all holders of claims against or interests in the Debtors, pursuant to Section 1125 of the Bankruptcy Code (the "Code").

NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THEIR FUTURE BUSINESS OPERATIONS OR THE VALUE OF THEIR ASSETS) ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS STATEMENT. FUTURE VALUES OF ASSETS ARE SUBJECT TO CHANGING MARKET CONDITIONS

AND MAY NOT BE PREDICTED WITH COMPLETE ACCURACY, EVEN WHERE QUALIFIED APPRAISALS MAY BE AVAILABLE.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE PLAN.

EXCEPT WHERE OTHERWISE INDICATED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN COMPILED BY MANAGEMENT OF THE DEBTORS AND HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT.

THIS DISCLOSURE STATEMENT IS A LEGALLY BINDING DOCUMENT AND SHOULD BE READ IN ITS ENTIRETY, AS OPPOSED TO RELYING ON THE SUMMARY. YOU MAY WISH TO CONSULT WITH A LAWYER IN ORDER TO FULLY UNDERSTAND THE DISCLOSURE AND PLAN ATTACHED HERETO.

THE DEBTORS BELIEVE THAT THIS DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE, AND REQUEST THAT YOU CAREFULLY REVIEW THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN, AND URGES THAT YOU ACCEPT THE PLAN BY PROMPTLY RETURNING YOUR COMPLETED BALLOT.

## II. VOTING INSTRUCTIONS

After carefully reviewing the Plan, including all attachments thereto, and this Disclosure Statement and its exhibits, please indicate your vote on the enclosed ballot and return them in the

envelopes provided to the Clerk of the Bankruptcy Court. PLEASE VOTE EVERY BALLOT YOU RECEIVE. Completed ballots for holders of all Classes should be returned in the envelope provided herewith and MUST BE RECEIVED BY THE END OF BUSINESS ON _____, the ____ day of _____, 2021. If you have claims or interests in more than one class under the Plan, you will receive multiple ballots. IF A BALLOT IS DAMAGED OR LOST, OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, CALL 1-954-400-7474.

As a creditor of the Debtors, your vote on the Plan is most important. In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resort to the "cram-down" provisions of the Code, votes representing at least two-thirds in amount and more than one-half in number of Claims allowed for voting purposes of each impaired class that are voted must be cast for the acceptance of the Plan.

### III. HISTORY OF THE DEBTORS

Mr. Santana is a horse trainer, engaged in the business of acquiring and training horses for competition. Mrs. Santana is a stay at home mother and housewife who assists her husband in the operation of his businesses. The Debtors' business was severely damaged by the COVID shut down because they were unable to show any horses, and yet they were required to board and feed them without revenue necessary to fund the business. As a result they fell behind on their home mortgage payments. Additional issues concerning the litigation over the sale of a particular horse which has affected Mr. Santana's ability to train and show horses internationally is also impairing the Santanas' ability to recover after COVID. Since the filing of this case, Mr. Santana's company was required to defend a lawsuit involving a frivolous lawsuit. Due to COVID it has been difficult to get a court date to end this litigation. Although the Debtors' business has not fully

recovered, Ms. Santana's family has agreed to provide the funds required to make the family's mortgage payment and assist in funding the plan of reorganization. The Santana's are prepared to settle their financial obligations, with assistance from family members as set forth in the plan of reorganization.

### IV. DEFINITIONS

The definitions contained in the Plan have the same meaning when used in the Disclosure Statement.

### V. FINANCIAL DATA

The Debtor's Periodic Financial Reports are available for inspection and review at the Clerk of the Bankruptcy Court's office in West Palm Beach, Florida, or at the offices of the Debtor. These reports set forth all of the Debtor's income and expenses as of the Petition Date.

### VI. SUMMARY OF CLAIMS

Administrative Expenses are estimated to be as follows:

Susan D. Lasky, Esquire is holding a retainer of $ 10,000 in trust. Legal Fees are estimated to be an additional $5,000.00. No additional monies were paid to the P.A. during the pendency of the case. All fees for professional compensation payable from Debtor's funds are subject to Court approval.

Priority Claims: None

Secured Claims:

U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE OF GCAT 2019 -NQM1 TRUST

Claim No. 8-2 in the amount of $996,738.99
Internal Revenue Service        $13,100.80 (The Internal Revenue Service filed Claim No. 17-2 which is a a lien on the Real Property and the Debtor's personal property, as of the Petition Date securing its claim in the aggregate amount of $515,719.94. There is no equity in the Debtor's real property and Debtors personal property has a value of $13,100.80)

**General Unsecured Claims**.

| | | | |
|---|---|---|---|
| Palms West Hospital | | | $ 2,000.00 Claim 1 |
| Bank of America | $ | 53,290.68  Claim 2 | |
| Bank of America | $ | 38,066.98  Claim 3 | |
| BMW Financial Services | | | $ 2,,686.00 Claim 4 |
| BMW Financial Services | $ | 97,831.47  Claim 5 (disputed) | |
| JP Morgan Chase | $ | 21,559.30  Claim 6 | |
| Quantum 3 Group CF Medical | | | $      75.62  Claim 7 |
| Pawnee Leasing | $ | 119,182.25 Claim 10 | |
| Synchrony Bank | $ | 8,092.59  Claim 11 | |
| Synchrony Bank | $ | 12, 902.00 Claim 12 | |
| Quantum 3 Group Comenity  1 | | | $    591.70 Claim 13 |
| HSBC | | | $ 2,525.26 Claim 15 |
| Internal Revenue Service | $ | 515,719.94 Claim 17-2 | |
| Ballard | $ | 866,845.21 | $    407.97 |
| | | | $  8,286.55 |

Michael O Preletz, Trustee                                           $1,215,080.62 Claim 14
                                                                                              (contingent)

First Republic Bank                                                     $1,200,122.15 Claim 16

**Claims listed as disputed and no claim filed and thereby stricken:**

Gustavo Chaves $1,200,000.00
Reynaldo Roberto Daza $19,008.00
JDF Financial $24,537.48 and $8,737.73 (no deficiency, JDF is secured by corporate property)

Voidable transfers and/or Preferences   None
Non-Bankruptcy Litigation.    None
Tax Consequences arising from Debtor's Reorganization.  Pre petition Debt is resolved .
Affiliates:   **Santana Stables LLC ( training farm)**
**and Santana Equestrian Private Financial LLC (finances the purchase of horses with private investors)**

## VII.  ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

Administrative Expenses of the type specified in 11 U.S.C. §503, §506 (c) §507(a)(1) which are authorized and allowed by the Court will be paid in full at Confirmation or as otherwise agreed upon between the parties. Susan D. Lasky, Esquire  will seek an award of

compensation from the Court.

### VII. PRIORITY CLAIMS

All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtors will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of the Plan, within fourteen (14) business days of the entry of an order confirming the Plan. Furthermore, the Debtors (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

**Priority Tax Claims**. None

### VIII. CLASSIFICATION AND TREATMENT OF CLAIMS

**CLASS 1** will consist of the Allowed Secured of U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE OF GCAT 2019 -NQM1 TRUST (U.S. .Bank) which filed Claim No. 8-2 in the amount of $996,738.99. This secured claim arises from a Note to Homexpress Mortgage Corp in the amount of $975,000.00. The Note is secured by a first mortgage on Debtors' homestead located at 2865 Polo Island Dr. Wellington Fl 33414, legally described as follows:

> Lot 1, of POLO ISLAND OF PALM BEACH POLO AND COUNTRY CLUB WELLINGTON P.U.D,

The Mortgage was recorded July 24, 2018 in the Official Records Book 30011, at Page 561 of the Public Records of Palm Beach County. Debtor will commence making the regular monthly mortgage payment on September 1, 2021 and continue to make the regular monthly payment under the original terms and conditions of the Note and Mortgage. In addition the Debtor will reinstate the Mortgage by paying the amount of the all pre and post petition arrears in 60 equal monthly installments commencing on the Petition Date.  US Bank will retain all liens until paid in full.

**CLASS 2** will consist of the Allowed Secured of the Internal Revenue Service in the amount of 13, 100.80  (Claim 17-2) in 60 equal monthly payments of no less than $230.00 plus the statutory rate of interest. The Internal Revenue will retain its tax lien until the allowed secured claim of the Internal Revenue Service is paid in full.

**CLASS 3** will consist of the will consist of the Allowed Unsecured Claims which are more tha $3,000.00  as follows:

| Creditor | Amount | Claim |
|---|---|---|
| Bank of America | $ 53,290.68 | Claim 2 |
| Bank of America | $ 38,066.98 | Claim 3 |
| BMW Financial Services | $ 97,831.47 | Claim 5 (disputed) |
| JP Morgan Chase | $ 21,559.30 | Claim 6 |
| Pawnee Leasing | $ 119,182.25 | Claim 10 |
| Synchrony Bank | $ 8,092.59 | Claim 11 |
| Synchrony Bank | $ 12, 902.00 | Claim 12 |
| Internal Revenue Service | $ 515,719.94 | Claim 17-2 |
| | **$ 866,845.21** | |

Class 3 creditors which have an allowed claim in excess of $3,000.00 will be paid 5% of their claims in 20 equal quarterly payments commencing on the Effective Date**. (estimated to be $2,167.11 quarterly)**

**CLASS 4** will consist of the Allowed Unsecured Claims which are $3,000.00 or less as follows:

| | | |
|---|---|---|
| Palms West Hospital | $ 2,000.00 | Claim 1 |
| BMW Financial Services | $ 2,,686.00 | Claim 4 |
| Quantum 3 Group CF Medical | $      75.62 | Claim 7 |
| Quantum 3 Group Comenity  1 | $    591.70 | Claim 13 |
| HSBC | $ 2,525.26 | Claim 15 |
| Ballard | $    407.97 | |
| | **$  8,286.55** | |

Class 4 creditors with allowed claims in excess of $3,000.00 will be paid 5% of their claims on the Effective Date.

**CLASS 5** will consist of the allowed claim of First Republic Bank in the amount of $1,200,122.15 (Claim 16) and/or the allowed claim of Michael O Preletz, Trustee $1,215,080.62 (Claim 14). The allowed claim of Michael O Preletz, Trustee (Claim 14) is contingent because First Republic Bank is secured by the property of Michael O. Preletz, Trustee, not property of the Debtors' estate. Mr. Preletz, as Trustee, is negotiating directly with First Republic. Mr. Preletz will not receive a distribution under the Debtors' plan of reorganization.

**CLASS 6** will consist of the individual Debtor who will not receive any distribution under the plan.

## IX.  SUMMARY OF THE PLAN AND MEANS FOR EXECUTION
### A.  SUMMARY OF THE PLAN

The Plan which accompanies this Disclosure Statement sets forth with particularity the manner in which all classes of creditors and interest holders will be paid or otherwise treated. Payment to all creditors will initially be made from funds provided by family members

Subsequent payments will be made from income generated by Debtors earnings or income .

Management and Compensation Not applicable, Individual case.

Ownership.    Not Applicable, individual case .

Affiliates :   **Santana Stables LLC ( training farm) and Santana Equestrian Private Financial LLC (finances the purchase of horses with private investors)**

### X.  IMPAIRMENT OF CLASSES

**Impaired Classes**.  A class of claims is impaired under the Plan when the Plan alters the legal, equitable and contractual rights to which this claim is entitled.

A. **Impaired Classes**. Class 3 and 4 are impaired and will be entitled to vote separately to accept or reject the Plan.

B. Acceptance by Class of Creditors. A class of claims will have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of Allowed Claims of such Class that have accepted or rejected the Plan. Class 3 and 4 are impaired.

C. Cramdown.  In the event that any impaired Class of creditors with claims against any of the Debtor's Estate will fail to accept the Plan in accordance with §1129(a) of the Bankruptcy Code, the Debtor may request the Bankruptcy Court to confirm the Plan in accordance with §1129(b) of the Bankruptcy Code.

### XI.  EFFECT OF CONFIRMATION

<u>**Effect of Confirmation**</u> Pursuant to 1141(d) upon confirmation of the Plan, the Debtor will be discharged of all claims and liabilities arising prior to the filing of the Petition, whether or not a proof of claim is filed, the claim is allowed or the holder of a claim has accepted the plan,  if the Debtor does not liquidate. Confirmation of the Plan will satisfy all claims or causes

of action arising out of any claim settled and satisfied under the terms of the Plan. Confirmation of the plan will vest title to all of its assets in the reorganized Debtor.

**Reservation of Rights Under Sections 1141(d)(5) and 350(a)**. The Debtors reserve the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of class 3 and 4 under the Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid inside the class of general unsecured creditors, the Debtors may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtors a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtors' right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtors after confirmation

## XII. BEST INTEREST OF CREDITORS AND FEASIBILITY STANDARD

The Bankruptcy Code requires that the Plan be accepted by requisite votes of impaired classes of creditors, that the Plan be proposed in good faith, be feasible, and that confirmation of the Plan be in the best interest of all holders of claims and interests. To confirm the Plan, the Bankruptcy Court must find that all these requirements are met. Accordingly, even if the creditors of the Debtor accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan feasibility and whether the Plan is in the best interest of creditors before the Court may confirm the Plan. The "best interests" test requires that the

Bankruptcy Court find that the Plan provides to each member of each impaired class of claims and interests a recovery which has a present value at least equal to the present value of the distribution which each such person would receive from the Debtor if the Debtor liquidated its assets under Chapter 7 of the Bankruptcy Code. The Debtor feels that the Plan as proposed is in the best interests of the creditors in that it provides for an efficient, effective and orderly satisfaction of the Debtor's objections to claims.

### XIII.  CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES

As a condition to confirmation, the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan.  The Bankruptcy Code, however, contains provisions for confirmation of a Plan even if the Plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cramdown" provisions for confirmation of the Plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in 11 U.S.C. 1129(b) which requires the Bankruptcy Court to find that the Plan treatment of a nonaccepting impaired class is fair and equitable.

### XIV.  OBJECTIONS TO CLAIMS

14.1    **Provisions for Treatment of Disputed Claims**. Debtor's objection to the claim of Pawnee Leasing is unresolved.  Debtors' object to Claim 5 in the amount of $97,831.47 filed by BMW.  This was a 36 month lease in the total amount fo $67,803.57, and Debtors have made 1/2 of the payments.  Debtor anticipates rejecting the lease with BMW dated 12/08 2019.

14.2    **Provision for Rejection Claims**.  In the event the rejection of a contract gives rise to a Rejection Claim not otherwise provided for herein, the holder of such claim must file such claim within thirty (30) days following the rejection of said contract or the Confirmation

Hearing whichever occurs first. Such claim must, in addition to its filing with the Bankruptcy Court, be served upon the undersigned attorneys for the Debtor.

### XV.  EXECUTORY CONTRACTS

**Executory Contracts and Unexpired Leases**.

Any executory contract or unexpired lease not specifically assumed will be deemed rejected.

### XVI.  LIQUIDATION AND FEASABILITY ANALYSIS & ALTERNATIVES TO CONFIRMATION, INCLUDING RISK

In the event that the accompanying Plan, as such may be further modified or amended, is not accepted by the holders of Allowed Claims and Allowed Interests in the impaired classes or otherwise confirmed by the Court under the cramdown provisions of Section 1129(b) of the Bankruptcy Code, the Debtor believes that his case would be dismissed or converted to a case under Chapter 7, a Trustee would be appointed.

On the Petition Date the Debtor's had the following personal property:

| | |
|---|---|
| 2006 Ford F-150 ( used on farm) | $ 1,461.00 |
| Household Furnishings | $ 4,000.00 |
| Jewelry | $    500.00 |
| Cash & investment accounts | $ 7,139.80 |
| | $ 13,100.80 |

The Internal Revenue Service claims a security interest based upon tax liens exceeding $500,000.00 on all of the Debtors' real and personal property. Accordingly, if this case were converted to chapter 7, the Debtors' home would be foreclosed and the value of their personal property would be distributed to the Internal Revenue Service. Accordingly, unsecured creditors would not realize payment on their claims if this case was converted to chapter 7.

The Debtor's household income is projected on Schedule I and J which are attached

hereto as Exhibit 1. Debtors' current disposable income is not sufficient to fund this plan. Debtors' are relying on a cash infusion from third party business investor or Ms. Santana's father, Mr. Peretz.

### XVII.  CONCLUSION AND RECOMMENDATIONS

The Debtor proposes its Plan and recommends its confirmation. All creditors will receive payment of their claims to the greatest extent allowable under the Bankruptcy Code, and the expense of administering an estate under Chapter 7 will be avoided. The Debtor affirms his belief that administration of this estate as provided herein will ultimately maximize payments to each creditor.

*s/ Paolo Santana*
  Debtor

*s/Jennifier Santana*
Joint Debtor

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

SUSAN  D. LASKY, ESQUIRE
Attorney for Debtor
320 S.E. 18th Street
Ft Lauderdale, FL  33316
Sue@suelasky.com
(954) 400-7474
(954) 206-0628 Fax

By: */s/ Susan Lasky*
SUSAN D. LASKY, ESQ.
Florida Bar No. 451096