UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH  DIVISION
www.flsb.uscourts.gov

IN RE:                                                    CASE NO.: 21-11861- EPK

PAULO SANTANA AND
JENNIFER SANTANA                          In proceedings under Chapter 11

Debtors.
_____/

## THIRD  AMENDED DISCLOSURE STATEMENT

Paulo and Jennifer Santana, (hereinafter referred to as the "Debtors"), pursuant to 11

U.S.C. 1125 and Bankruptcy Rule 3016(c) hereby provide this Third Amended Disclosure

Statement (the "Disclosure Statement") to all known creditors in order to disclose that

information deemed by the Debtors to be material, important and necessary for their creditors to

arrive at a reasonably informed decision in exercising their right to vote for acceptance,

rejection, or abstention from voting on the Third Amended Plan of Reorganization, (hereinafter

referred to as the "Plan"). A copy of the Plan accompanies this Disclosure Statement.

### I.  INTRODUCTION

Debtors filed their Plan with the United States Bankruptcy Court for the Southern District

of Florida and, in connection with the Plan, the Debtors hereby submit their Disclosure

Statement to all holders of claims against or interests in the Debtors, pursuant to Section 1125 of

the Bankruptcy Code (the "Code").

NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS

TO THEIR FUTURE BUSINESS OPERATIONS OR THE VALUE OF THEIR ASSETS) ARE

AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS STATEMENT.

FUTURE VALUES OF ASSETS ARE SUBJECT TO CHANGING MARKET CONDITIONS

AND MAY NOT BE PREDICTED WITH COMPLETE ACCURACY, EVEN WHERE

QUALIFIED APPRAISALS MAY BE AVAILABLE.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR

ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE OTHER THAN AS

CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN

ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE PLAN.

EXCEPT WHERE OTHERWISE INDICATED, THE FINANCIAL INFORMATION

CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN COMPILED BY

MANAGEMENT OF THE DEBTORS AND HAS NOT BEEN SUBJECT TO CERTIFIED

AUDIT.

THIS DISCLOSURE STATEMENT IS A LEGALLY BINDING DOCUMENT AND

SHOULD BE READ IN ITS ENTIRETY, AS OPPOSED TO RELYING ON THE SUMMARY.

YOU MAY WISH TO CONSULT WITH A LAWYER IN ORDER TO FULLY

UNDERSTAND THE DISCLOSURE AND PLAN ATTACHED HERETO.

THE DEBTORS BELIEVE THAT THIS DISCLOSURE STATEMENT COMPLIES

WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE, AND REQUEST THAT

YOU CAREFULLY REVIEW THIS DISCLOSURE STATEMENT AND THE

ACCOMPANYING PLAN, AND URGES THAT YOU ACCEPT THE PLAN BY PROMPTLY

RETURNING YOUR COMPLETED BALLOT.

## II.  VOTING INSTRUCTIONS

After carefully reviewing the Plan, including all attachments thereto, and this Disclosure

Statement and its exhibits, please indicate your vote on the enclosed ballot and return them in the

2

envelopes provided to the Clerk of the Bankruptcy Court. PLEASE VOTE EVERY BALLOT

YOU RECEIVE.  Completed ballots for holders of all Classes should be returned in the envelope

provided herewith and MUST BE RECEIVED BY THE END OF BUSINESS ON _____,

the ____ day of _____, 2021.  If you have claims or interests in more than one class under

the Plan, you will receive multiple ballots.  IF A BALLOT IS DAMAGED OR LOST, OR IF

YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, CALL 1-954-400-

7474.

 As a creditor of the Debtors, your vote on the Plan is most important. In order for the

Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resort to the

"cram-down" provisions of the Code, votes representing at least two-thirds in an amount and

more than one-half in number of Claims allowed for voting purposes of each impaired classes

that are voted must be cast for the acceptance of the Plan.

### III.  HISTORY OF THE DEBTORS

 Mr. Santana is a horse trainer, engaged in the business of acquiring and training horses

for competition. On the Petition Date he was in the business of training horses. The horses were

trained by Santana Stables LLC which was owned by Mr. Santana and his wife.  Some of the

horses were acquired with the assistance of  his wholly owned entity, Santana Equestrian Private

Financial, LLC which finances the purchase of horses with monies provided by private investors.

As more fully set forth below, Santana Stables is no longer operating. Mr. Santana anticipates

generating sufficient income to pay his monthly bills by brokering the sale of horses. He has not

generated any income from horse sales yet.

 Mrs. Santana is a home mother of two children and housewife. Prior to COVID she

occasionally assisted in the operations of the business of Santana Stables LLC. Since the filing

of this case, Ms. Santana's mother's alzheimer disease has significantly worsened causing Ms

Santana to become her mother's full time caretaker.  Due to the amount of time she was required to

spend in the hospital with her mother, Ms. Santana contracted a severe case of COVID and double

pneumonia. She was hospitalized for 6 days and still has not regained her full health.

      The Debtors have tax liabilities which they believe were the result of poor accounting

advice, however, they can no longer amend their returns to reflect all deductions to which they

would have been entitled. The Debtors' business was severely damaged by the COVID shut down

because they were unable to show any horses, and yet they were required to board and feed the

horses without sufficient revenue to fund the business.  Their business is seasonal and relies

heavily on an auction in June which was not conducted in 2020 due to COVID.  As a result the

Debtors fell behind on their personal and the corporate debt, which they personally guaranteed.

      The Debtors believed that the auction in June of 2021 would rehabilitate their business.

However, shortly before the auction, Santana Stables was served with a lawsuit alleging that

Santana Stables did not have clear title to a horse purchased by a high profile client. This litigation

damaged Santana Stables ability to sell its horses at the June 2021 auction.  Accordingly, Santana

Stable is no longer operating this current time.

      Mr. Santana also has unresolved international licensing issues which suspended his

activities to participate in equestrian shows both nationally and internationally until June 2022.

Since most equestrian riders require their coaches to be present at the shows, Mr. Santana's ability

to generate income from training horses for show has also been severely crippled.

      As demonstrated by the monthly operating reports filed with this court, Mr. Santana has

been unable to provide the income required to pay his family's monthly bills since June of 2021.

Michael Preletz, Mrs. Santana's father has gifted his daughter sufficient funds to pay monthly bills for food and utilities since June 2021 .

Due to the post petition setbacks arising from COVID, family illness, lawsuits and licensing issues, the Santana's are not even generating sufficient income to make a mortgage payment at this time. In order to give the Santana family a chance to recover debt free from their financial set back,  Mr. Preletz agreed to fund the plan of reorganization in the approximate amount of $60,000.00. See the letter from the Financial Advisor of Preletz attached as Exhibit 1.

## IV.  DEFINITIONS

The definitions contained in the Plan have the same meaning when used in the Disclosure Statement.

## V.  FINANCIAL DATA

The Debtors' Monthly Operating Reports are available for inspection and review at the Clerk of the Bankruptcy Court's office in West Palm Beach, Florida, or at the offices of the Debtor.  These reports set forth all of the Debtor's income and expenses as of the Petition Date.

## VI.  SUMMARY OF CLAIMS AND CLASSES

Administrative Expenses are estimated to be as follows:

Susan D. Lasky, Esquire is holding a retainer of $10,000 in trust. Legal Fees are estimated to be an additional $15,000.00. No additional monies were paid to the P.A. during the pendency of the case. All fees for professional compensation payable from Debtor's funds are subject to Court approval.

Priority Claims: Internal Revenue Service $4,337.95 Proof of claim 17-2

Secured CLASS 1  Claims:

U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE OF GCAT 2019 -NQM1 TRUST
Claim No. 8-2 in the amount of $996,738.99 accrued pre petition and $39,159.10 as of July 27, 2021 and an additional $7,584.22 each month thereafter.

Internal Revenue Service  $515,719.94  (The Internal Revenue Service filed Claim No. 17-2 which asserts a lien on Debtors'  Real Property and Personal Property Debtor does not believe there is equity in the Debtor's real property (homestead), and the IRS has most recently valued Debtors personal property in the amount of $12,950.50 (See ECF 66, page 3) However, Debtor's Schedules value the personal property to be worth $13,100.80.

**General Unsecured Claims**.          CLASS 3

| | | |
|---|---|---|
| Palms West Hospital | $      2,000.00 | Claim 1 |
| Bank of America | $    53,290.68 | Claim 2 |
| Bank of America | $    38,066.98 | Claim 3 |
| BMW Financial Services | $      2,686.00 | Claim 4 |
| BMW Financial Services | $    97,831.47 | Claim 5 |
| Financial Pacific Leasing | $    79,510.20 | Claim 9 |
| JP Morgan Chase | $    21,559.30 | Claim 6 |
| Quantum 3 Group CF Medical | $           75.62 | Claim 7 |
| Pawnee Leasing | $  119,182.25 | Claim 10 |
| Synchrony Bank | $      8,092.59 | Claim 11 |
| Synchrony Bank | $    12, 902.00 | Claim 12 |
| Quantum 3 Group Comenity  1 | $         591.70 | Claim 13 |
| HSBC | $      2,525.26 | Claim 15 |
| Internal Revenue Service | $      1,172.14 | Claim 17-2 |
| Ballard | $         407.97 | |
| **Total** | **$  439,894.16** | |

**Unsecured Claims CLASS 3**

| | |
|---|---|
| Michael O Preletz, Trustee | $1,215,080.62 Claim 14 |
| (contingent, as the guarantor of First Republic Claim16 ) | |
| First Republic Bank | $1,200,122.15 Claim 16 |

**Claims listed as disputed and no claim filed and thereby stricken:**

JDF Financial $24,537.48 and $8,737.73 (no deficiency, JDF is secured by corporate property)

Voidable transfers and/or Preferences   None
Non-Bankruptcy Litigation.    None
Tax Consequences arising from Debtor's Reorganization.  Pre petition debt will be resolved.
Affiliates:  **Santana Stables LLC (training farm)**
**and Santana Equestrian Private Financial LLC (finances the purchase of horses with private investors)**

## VII.  ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

Administrative Expenses of the type specified in 11 U.S.C. §503, §506 (c) §507(a)(1) which are authorized and allowed by the Court will be paid in full at Confirmation or as otherwise agreed upon between the parties. Susan D. Lasky, Esquire  will seek an award of compensation from the Court.

Notwithstanding any other Plan provisions to the contrary, until the Effective Date of a confirmed Plan, the Debtor will timely file with the Court all monthly operating reports and will timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6). No later than two (2) days after the occurrence of the Effective Date of the confirmed Plan, the reorganized debtor will file with the Court a "Notice of Effective Date" identifying the Effective Date and stating that it has occurred. Following the Effective Date of the confirmed Plan, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan must each timely complete and file the post-confirmation report on a calendar quarterly basis and pay the U.S. Trustee appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) until one of the following is entered on the docket: (1) a Final Decree; (2) an order converting the case to another chapter; or (3) an order dismissing the case

## VII.    PRIORITY CLAIMS

**Priority Tax Claims**.  Internal Revenue Service $4,337.95 Proof of claim 17-2 will be paid on the Effective Date.

## VIII.    CLASSIFICATION AND TREATMENT OF CLAIMS

**CLASS 1** will consist of the Allowed Secured of  U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE OF GCAT 2019 -NQM1 TRUST (U.S. Bank) which  filed Claim No. 8-2 in the amount of

$996,738.99.  This secured claim arises from a Note to Homexpress Mortgage Corp. in the amount of $975,000.00. The Note is secured by a first mortgage on Debtors' homestead located at 2865 Polo Island Dr. Wellington Fl 33414, legally described as follows:

> Lot 1, of  POLO ISLAND OF PALM BEACH POLO AND COUNTRY CLUB WELLINGTON P.U.D,

The Mortgage was recorded July 24, 2018 in the Official Records Book 30011, at Page 561 of the Public Records of Palm Beach County.

Upon the Effective Date, US Bank will be free to assert its contractual and state law rights with respect to the Residence, including the right to proceed with its foreclosure remedies. Debtors will, however, seek to market the Residence for the purpose of obtaining a sale price sufficient to pay in full the US Bank secured claim and the IRS secured claim against the Residence (Class 2).  If Debtors cannot obtain an adequate sale price to pay off the two secured claims, they will not sell the house.  Debtors think it unlikely that they will be able to obtain a high enough sale price to pay the two secured claims, estimated to require a price of $1,600,000.00, but they will attempt to do so.

**CLASS 2** will consist of the Allowed Secured of the Internal Revenue Service (IRS) which is secured by Debtor's personal property in the amount of $13,100.80  (Claim 17-2).  The Debtor will pay the claim secured by the personal property on the Effective Date.  The IRS has amended Claim 17-1 to reclassify their general unsecured claim as secured by reason of a tax lien which is secured by the Debtor's  homestead,  in the amount of $502,619.14 ( $515,719.94 less $13,100.80).  The IRS will retain its lien on Debtor's real property.  The portion of the IRS claim 17-2 which is  alleged to be secured by a lien on the Homestead will be deemed to be satisfied from the equity in the homestead property, if any,  and the IRS will not receive a

distribution or be treated as a general unsecured creditor with respect to the amount of $502,619.14.

Upon the Effective Date Debtors will, seek to market the Residence for the purpose of obtaining a sale price sufficient to pay in full the US Bank claim and the IRS secured claim against the Residence.  If Debtors cannot obtain an adequate sale price to pay off the two secured claims, they will not sell the house.  Debtors think it unlikely that they will be able to obtain a high enough sale price to pay the two secured claims, estimated to require a price of approximately $1,600,000.00, but they will attempt to do so.

**CLASS 3** will consist of the will consist of the Allowed Unsecured Claims.  On the Effective Date,  Class 3 creditors will be  paid 5% of their allowed claim.

**CLASS 4** will consist of the allowed claim of First Republic Bank ("First Republic") in the amount of $1,200,122.15 (Claim 16) and the allowed claim of Michael O Preletz, Trustee ("Preletz") $1,215,080.62 (Claim 14). First Republic made a loan to the Debtors, which loan was unsecured as to the Debtors but guaranteed/secured by assets of Preletz. Preletz filed a contingent claim based upon his liability to First Republic. As such there is really only one debt in this class because Preletz will not be owed money until and unless he has paid First Republic. In any event, the Class 4 claimant will not receive a distribution under the plan of reorganization.

**CLASS 5** will consist of the individual Debtors, but will not receive any distribution under the plan.

### IX.  SUMMARY OF THE PLAN AND MEANS FOR EXECUTION

### A.  SUMMARY OF THE PLAN

The Plan which accompanies this Disclosure Statement sets forth with particularity the

manner in which each class of creditors and interest holders will be paid or otherwise treated.

Payment to all creditors will  be made from funds provided by  Michael O. Preletz. Subsequent

payments will be made from income generated by Debtors earnings or income.

Management and Compensation. Not applicable, individual case.

Ownership.      Not Applicable, individual case.

Affiliates :  **Santana Stables LLC (training farm) is no longer operating. Santana
Equestrian Private Financial LLC will broker the purchase of horses with private
investors.**

### X.  IMPAIRMENT OF CLASSES

**Impaired Classes**.  A class of claims is impaired under the Plan when the Plan alters the

legal, equitable and contractual rights to which this claim is entitled.

A.      **Impaired Classes**. Class 1, 2, 3 and 4  are impaired and will be entitled to vote

separately to accept or reject the Plan.

B.      Acceptance by Class of Creditors. A class of claims will have accepted the Plan if

the Plan is accepted by at least two-thirds (2/3) in an amount and more than one-half (½) in

number of Allowed Claims of such Class that have accepted or rejected the Plan. Classes 1, 2, 3,

and  4 are impaired.

C.      Cramdown.  In the event that any impaired Class of creditors with claims against

any of the Debtor's Estate will fail to accept the Plan in accordance with §1129(a) of the

Bankruptcy Code, the Debtor may request the Bankruptcy Court to confirm the Plan in

accordance with §1129(b) of the Bankruptcy Code.

### XI.  EFFECT OF CONFIRMATION

**Effect of Confirmation**  Pursuant to 1141(d) (5) (A) unless after notice and hearing the

court orders otherwise for cause, confirmation of the Plan does not discharge any debt provided for in the plan until the court grants a discharge upon completion of all payments to Class 3 under the Plan. Upon entry of  the discharge,  Debtor will be discharged of all claims and liabilities arising prior to the filing of the Petition, whether or not a proof of claim is filed, the claim is allowed or the holder of a claim has accepted the plan. Confirmation of the Plan will satisfy all claims or causes of action arising out of any claim settled and satisfied under the terms of the Plan. Confirmation of the plan will vest title to all of its assets in the reorganized Debtor.

**Reservation of Rights Under Sections 1141(d)(5) and 350(a)**. The Debtors reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of class 3under the Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid inside the class of general unsecured creditors, the Debtors may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtors a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtors' right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief will similarly be preserved until such time as it is requested by the Debtors after confirmation

## XII.  BEST INTEREST OF CREDITORS AND FEASIBILITY STANDARD

The Bankruptcy Code requires that the Plan be accepted by requisite votes of impaired classes of creditors, that the Plan is proposed in good faith, is feasible, and that confirmation of the Plan is in the best interest of all holders of claims and interests. To confirm the Plan, the

Bankruptcy Court must find that all these requirements are met.  Accordingly, even if the creditors of the Debtor accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan feasibility and whether the Plan is in the best interest of creditors before the Court may confirm the Plan. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired class of claims and interests a recovery which has a present value at least equal to the present value of the distribution which each such member would receive from the Debtor if the Debtor liquidated its assets under Chapter 7 of the Bankruptcy Code. The Debtor feels that the Plan as proposed is in the best interests of the creditors in that it provides for an efficient, effective and orderly satisfaction of the Debtor's objections to claims.

### XIII.   CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES

As a condition to confirmation, the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan.  The Bankruptcy Code, however, contains provisions for confirmation of a Plan even if the Plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cramdown" provisions for confirmation of the Plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in 11 U.S.C. 1129(b) which requires the Bankruptcy Court to find that the Plan treatment of a nonaccepting impaired class is fair and equitable.

### XIV.  OBJECTIONS TO CLAIMS

14.1   **Provisions for Treatment of Disputed Claims**.  Debtors' have allowed Claim 5 in the amount of $97,831.47 filed by BMW.  This was a 36 month lease in the total amount of $67,803.57.  Debtors have made ½ of the payments. The difference in the amount of the claim

and the unpaid lease payments represents the residual value of the car which the  Debtors anticipate returning upon rejecting the lease with BMW dated 12/08 2019. On the Effective Date, the BMW lease dated 12/08/2019 is deemed to be rejected.

14.2   **Provision for Rejection Claims**.  In the event the rejection of a contract or unexpired lease gives rise to a Rejection Claim not otherwise provided for herein, the holder of such claim must file such claim within thirty (30) days following: (1) the rejection of such unexpired lease or executory contract or (2) the Confirmation Hearing whichever occurs first. Such claim must, in addition to its filing with the Bankruptcy Court, be served upon the undersigned attorneys for the Debtor.

## XV.  EXECUTORY CONTRACTS

**Executory Contracts and Unexpired Leases**. Absent specific assumption in this proceeding,  all executory contracts and unexpired leases are deemed rejected, including but not limited to the Debtors lease agreement with BMW Financial Services (Claim 5).

## XVI.   LIQUIDATION AND FEASABILITY ANALYSIS & ALTERNATIVES TO CONFIRMATION,  INCLUDING RISK

In the event that the accompanying Plan, as such Plan may be further modified or amended, is not accepted by the holders of Allowed Claims and Allowed Interests in the impaired classes or otherwise confirmed by the Court under the cramdown provisions of Section 1129(b) of the Bankruptcy Code, the Debtors believe that this case would be dismissed or converted to a case under Chapter 7, and a Trustee would be appointed.

On the Petition Date the Debtor's had the following personal property:

| | |
|---|---|
| 2006 Ford F-150 ( used on farm) | $ 1,461.00 |
| Household Furnishings | $ 4,000.00 |
| Jewelry | $   500.00 |

      Cash & investment accounts       $ 7,139.80
                                      $ 13,100.80

The Internal Revenue Service claims a security interest based upon tax liens exceeding

$500,000.00 on all of the Debtors' real and personal property.  Accordingly, if this case were

converted to chapter 7, the Debtors' home would be foreclosed and the value of their personal

property would be distributed to the Internal Revenue Service.  Accordingly, unsecured creditors

would not realize payment on their claims if this case was converted to chapter 7.

      Debtors' are currently being supported by Michael O. Preletz, Mrs. Santana's father,

who is also funding the Plan.

### XVII.  CONCLUSION AND RECOMMENDATIONS

     The Debtors proposes the Plan and recommend its confirmation. All creditors will

receive payment of their claims to the greatest extent allowable under the Bankruptcy Code, and

the expense of administering an estate under Chapter 7 will be avoided. The Debtors affirm their

belief that administration of this estate as provided herein will ultimately maximize payments to

each creditor.

                         *s/ Paolo Santana*
                          Debtor

                         *s/Jennifier Santana*
                         Joint Debtor

     I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court
for the Southern District of Florida and I am in compliance with the additional qualifications to
practice in this court set forth in Local Rule 2090-1(A).

                         SUSAN  D. LASKY, ESQUIRE
                         Attorney for Debtor
                         320 S.E. 18th Street
                         Ft Lauderdale, FL  33316
                         Sue@suelasky.com
                         (954) 400-7474/(954) 206-0628 Fax

                         By: */s/ Susan Lasky*
                         SUSAN D. LASKY, ESQ.
                         Florida Bar No. 451096

# EXHIBIT "1"

# FIRST REPUBLIC PRIVATE WEALTH MANAGEMENT

*It's a privilege to serve you®*

November 9, 2021

Susan D. Lasky, Esquire
320 S.E. 18th Street
Fort Lauderdale, FL. 33316

Re: Michael O. Preletz

Dear Ms. Lasky:

The above-captioned individual, a client of this firm, has asked us to communicate with you regarding U.S. Bankruptcy Case No.: 21-11861-EPK, Paulo Santana and Jennifer Santana, Debtors.

You have provided us with a "Certificate of Amount Deposited and Payment of Fees" in the amount of $59,433.46, which Mr. Preletz has agreed to pay.

This letter will confirm that Mr. Preletz has sufficient funds on hand at First Republic to make the payment he has committed to.

If you have any questions, or need additional information regarding this matter, please contact the undersigned.

Very Truly Yours,

*Gary Pollock*
BCA8B09D37544BF...

**Gary Pollock**
Senior Managing Director, Wealth Manager
First Republic Investment Management
**First Republic Private Wealth Management**
111 Pine Street | San Francisco, CA 94111-5628
Office: (415) 296-5721 | Fax: 415-395-1205.
Email: gpollock@firstrepublic.com

111 Pine Street, San Francisco, California 94111  •  (415) 392-1400  Toll Free (800) 392-1400  •  firstrepublic.com
First Republic Private Wealth Management encompasses First Republic Investment Management, Inc., an SEC-registered Investment Advisor,
First Republic Trust Company, First Republic Trust Company of Delaware LLC and First Republic Trust Company of Wyoming LLC.

Investment and Advisory Products and Services are Not FDIC Insured, Not Bank Guaranteed and May Lose Value.